**SMITH v. JONES, Collector of Internal Revenue.**

Clv. No. 4655.

United States District Court
W. D. Oklahoma.

Jan. 16, 1951.

Ram Morrison, Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl. and B. H. Pester, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendant.

VAUGHT, Chief Judge.

The plaintiff seeks to recover the sum of $8700.27, with interest thereon from March 15, 1948, for a deficiency assessment on his income tax return for the year 1944. The defendant answered, denying liability. The facts are stipulated to a large extent, except as to such further matters as were introduced at the trial which consisted largely of exhibits.

The plaintiff, N. T. Smith, and his brother, W. P. Smith, are partners, operating under the name of Smith Brothers Drilling Company, and during the taxable year were engaged in drilling oil wells. On October 10, 1944 they entered into a contract with one C. L. Carlock in which they agreed to drill an oil well to be known as Tom Blythe No. 1 in the Northwest Quarter of the Northwest Quarter of the Northwest Quarter of Section 29, Township 1 North, Range 1 East, of the I. M., Garvin County, Oklahoma. The contract provided that the well should be drilled to a depth of 4500 feet, or to the Bromide Sand, and if said sand was encountered they should drill 50 feet in said sand; that "in case the depth of 4500 feet, or the Bromide Sand is reached, and the same is dry that the said party of the first part is to plug and abandon said well in conformity with the rules and regulations of the Oklahoma Corporation

Commission," that the actual drilling of said well should commence on or before November 1, 1944 and be drilled with due diligence, and be completed within a period of six months from the date of the contract.

On or about November 1, 1944, the well was commenced and on November 18, 1944 had been drilled to a depth of 2614 feet. On that date a cave-in of the hole occurred and the hole was lost. The rig was skidded to a new location and on December 1, 1944 another hole was begun; the drilling to the 4500 feet depth under the terms of the contract was completed on January 23, 1945; under an amendment to the contract, ten days additional work was completed on February 2, 1945; under a second amendment to the contract, seven days additional work was completed on February 9, 1945; and the drilling was continued for several days thereafter under an oral agreement. The cost of drilling the hole that was lost was $14,332.55. The partners carried this cost into the partnership books as a loss and deducted it in determining the distributable net income of the partnership for the year 1944. The Commissioner of Internal Revenue disallowed the loss for the year 1944 and ruled that any loss sustained was deductible in determining the net income for the subsequent year, the year in which the second hole was completed. The plaintiff was required to pay a deficiency assessment of $7392.08, together with interest of $1308.19, or the sum of $8700.27.

The defendant contends that the partnership kept its books and filed its information tax returns on the "completed contract basis," and that the expenses incurred in drilling both wells, where the drilling was not completed until 1945, should be charged in 1945. Also, that the loss resulting from the cave-in was not a "casualty loss."

The court is of the opinion that these contentions are both erroneous. The situation is brought about by the erroneous views of the Commissioner in analyzing the facts of the controversy and is evidenced by the remarks in the argument on pages 10 and 11 of the defendant's brief: "Taxpayer in his claim for refund set the

ground of loss by abandonment. In order to sustain that ground he must show that there was abandonment of the unit of operation. * * * In the instant case the drilling contract was the unit and it was not abandoned. The drilling of the abandoned hole was only an incident in the performance of the contract and does not constitute an abandonment of the unit."

We have no quarrel with the authorities cited, but they clearly do not apply to the situation here. The contract under which the well was to be drilled was for a single well and not a group of wells. The evidence discloses that when drilled under normal conditions it required but 54 days to complete a well. Under the terms of the contract a well was to be drilled to a depth of 4500 feet. The drilling was begun under a contract on a well; that well was drilled to a depth of 2614 feet under that contract, and on account of an accident or misfortune an abandonment of that hole was forced. It all occurred between November 1, and November 25, 1944, and the loss sustained was $14,332.55. It is wholly immaterial whether the contract was the "unit of operation" or the well was the "unit of operation;" whether the books were kept on a "completed contract basis" or otherwise. So far as the first hole drilled was concerned, when it was abandoned the transaction was complete, a closed incident, and the contract at an end so far as it pertained to the loss sustained. The contract provided the drilling operation was to be at the cost, risk and expense of the drilling company. When the rig was skidded to a new location and drilling began on the second hole, it then became a completely new operation under the contract for all purposes concerned and at that moment became a completely new undertaking.

Under the stipulation and facts shown, there is no room for a strained or ingenious construction to be indulged in here. The facts are plain and undisputed. The transaction on the first well was complete and the undisputed loss sustained in the year 1944 and properly reported in the tax return for the year 1944. The plaintiff is entitled to recover the sum of $8700.27, with interest thereon at the rate of six per

cent per annum from the date of payment, March 15, 1948, until paid.

Findings of fact, conclusions of law and a proper form of judgment, consistent with this opinion, may be submitted within fifteen days from this date.