JONES, Collector of Internal Revenue v.
SMITH.

No. 4289.

United States Court of Appeals
Tenth Circuit.

Dec. 21, 1951.

Rehearing Denied Jan. 30, 1952.

Richard D. Harrison, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Special Assts. to the Atty. Gen., on the brief), for appellant.

Ram Morrison, Oklahoma City, Okl., for appellee.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents for determination the validity of an assessment of additional income tax imposed upon N. T. Smith, hereinafter referred to as the taxpayer, for the year 1944. Smith Brothers, a co-partnership consisting of the taxpayer and W. P. Smith, was engaged in the business of drilling wells for oil and gas. In October, 1944, the partnership entered into a contract with C. L. Carlock to drill for him a well to the depth of 4,500 feet for $22,500. Drilling was begun on or about November 1; on November 18, the well had been drilled to a depth of 2,614 feet; and on that date a cave-in occurred which froze the pipe. After extended efforts to free the pipe failed, the hole was abandoned; the drilling rig was skidded to a new location about 100 feet from the original location; and on December 1, the drilling of a new hole was begun. The drilling of the new hole to a depth of 4,500 feet under the terms of the original contract was completed on January 23, 1945; and additional drilling under amendments or supplements to the original contract was completed in February, 1945. The cost of drilling the hole which was abandoned amounted to $14,332.55.

In its books and records, the partnership maintained a separate account for each contract to drill a well. All direct costs incurred in the performance of that contract were debited to such account. At the end of the taxable year these tangible costs were deferred on uncompleted contracts and were not carried into the profit and loss account as earnings of the business until the contract to which they related was completed. General overhead expenses were deducted in the taxable year in which they were incurred. The partnership established and maintained that accounting practice preceding and following the execution and fulfillment of the contract with Carlock. And the partnership regularly filed information tax returns in which direct costs allocable to each contract were treated in that manner. The costs incurred in the drilling of the hole which was abandoned were carried into the partnership books as a loss and deducted in determining the distributable net income of the partnership for the year 1944. The Commissioner of Internal Revenue determined that any loss sustained in the drilling of such hole was not deductible in arriving at the distributable net income of the partnership for the year 1944; and that instead, it was deductible for the year 1945, the year in which the work under the contract was completed. The impact of that determination resulted in a deficiency in tax being imposed upon the taxpayer for the year 1944. The deficiency with interest thereon was paid. A claim for refund was submitted and denied. The taxpayer filed this suit against the collector to recover the amount paid. Judgement was entered for the taxpayer, D.C., 94 F.Supp. 686; and the collector appealed.

Section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, provides in presently material part that in computing net income of an individual there shall be allowed as deductions "losses sustained during the taxable year and not compensated for by insurance or otherwise—if incurred in trade or business; or * * * of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck,

or other casualty, or from theft"; and section 41, 26 U.S.C.A. § 41, insofar as material here, provides that net income shall be computed on the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but that if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner of Internal Revenue does clearly reflect the income. Section 29.23 (e)-1, Treasury Regulation 111, provides among other things that losses sustained by an individual and not compensated for by insurance or otherwise are deductible if arising from fires, storms, shipwreck, or other casualty, and a deduction therefor has not prior to the filing of the return been claimed for estate purposes in the estate tax return. Section 29.41-2(c) of the regulation provides that a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. And Section 29.42-4 provides in presently pertinent part that income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and the terms of the particular contract; that, as used in the section, the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year from the date on which the contract is finally completed and accepted; that persons whose income is derived in whole or in part from such contracts may report gross income for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided the method clearly reflects the net income; and that a taxpayer may change his method of accounting to accord with paragraph (a) or (b) of the section only after permission is secured from the Commissioner as provided in Section 29.41-2.

There is no controversy between the parties as to whether the cost incurred in the drilling of the hole which caved in was deductible from gross income of the partnership in arriving at the distributable net income of the business. The controversy concerns itself solely with the question whether the deduction was to be made for the year 1944 or 1945. While Section 29.42-4 of the regulation, supra, provides that the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year from the date of the contract to the completion and acceptance of the work done under the contract, while the partnership was engaged in the business of drilling wells for oil and gas, and while ordinarily its contracts were completed within thirty days, sixty days, ninety days, or four months, the Commissioner does not challenge the general accounting practice of keeping the books and records of the partnership, particularly with respect to deferring the carrying of tangible costs into profits and losses as earnings of the business until completion of the contract to which they relate. The taxpayer argues that such method is accepted accounting practice among those engaged in the business of drilling wells for oil and gas, and that it clearly reflects income. And the Commissioner does not take exception to it. The method of keeping the books and records of the partnership was a slight modification of the strict accrual method. It was substantially the long-term contract method as applied to a completed contract basis. And under the system, the contract for the drilling of the well in question was the unit of operation in computing gain or loss arising from the performance or fulfillment of the contract. The original contract was to drill a well to the depth of 4,500 feet for a specified sum. It was not the number of holes necessary for the fulfillment of the obligation. The amendments or supplements called for drilling below that depth, but the original contract was not completed or fulfilled until 1945. The loss of the first hole occasioned by the cave-in during 1944 did not terminate the con-

tract or free the partnership of its obligation under it. The cave-in did not complete the transaction. It did not enlarge, diminish, or otherwise change the obligation resting upon the partnership to drill a hole to the depth of 4,500 feet. And the beginning of the new hole did not give rise to a new contract or a new obligation on the part of the partnership. The contract remained the same. It was a single contract. It was the unit of operation. And the second hole was begun and drilled to the depth of 4,500 feet pursuant to its provisions. The expenditures made for the drilling of the first hole were merely part of the costs incurred in the discharge of the obligation resting upon the partnership under the terms of the contract. And under the accounting practice of keeping the books and records of the partnership, such expenditures were to be taken into consideration in determining the profit or loss on the completion of the contract in 1945. Treating them as deductible in 1944 rather than in 1945 constituted a departure from the accounting practice of the partnership on which its information returns were prepared and submitted. And the partnership was not free to make that change in its accounting practice and reflect such change in its information returns without the consent of the Commissioner. St. Paul Union Depot Co. v. Commissioner, 8 Cir., 123 F. 2d 235.

■■ Under Section 23 of the Internal Revenue Code, supra, and Section 29.23 (e)–1 of the Regulation, supra, a loss sustained during a taxable year arising from fire, storm, shipwreck, or other casualty, may be deducted from gross income unless at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes. The taxpayer seeks to uphold the judgment in his favor on the ground that the cave-in of the hole was a casualty within the intent and meaning of the statute and the regulation. In the course of his argument, the taxpayer states among other things that more drilling rigs are lost by fire than are holes lost under circumstances similar to those presented here. The statute and the regulation provide in blueprinted language that a loss sus-

tained by fire may be deducted, unless a deduction for estate tax purposes has been claimed; but a deduction for loss occasioned by the cave-in of a well being drilled for oil and gas is not expressly authorized. And while the loss of holes being drilled for oil and gas from cave-ins may be infrequent, a loss of that kind is not of such extraordinary occurrence that it may appropriately be catalogued as a casualty within the intent and meaning of the statute and the regulation. Instead, such a loss is an incident which may arise in the drilling of deep wells of that kind. And a loss sustained in that manner is not deductible under the statute and the regulation during the year in which it occurs if the books and records of the taxpayer are consistently kept and its information tax returns consistently filed on substantially the completed contract basis and the contract for the drilling of the particular well is not completed until the next year.

The judgment is reversed and the cause remanded.