Howell, Judge,
delivered the opinion of the court:
This is an action to recover excess profits taxes for the years 1942 and 1943 assessed against and paid by plaintiff, *116 a common carrier of passengers by motorbus. The facts have been stipulated, and the only issues before us are the legal conclusions to be drawn from those facts.
Plaintiff contends that in computing its excess profits tax liability for the years here involved, its base period excess profits net income should be adjusted by disallowing, pursuant to the provisions of section 711 (b) (1) (E) of the Internal Eevenue Code, 26 U. S. C., the cost of repairs to its buses in the base period due to accidents. This expenditure was deducted in the base period year as part of “Cost of Operations”. The effect of the disallowance plaintiff seeks would be to increase its excess profits credits for the years 1942 and 1943, and thus to lower its excess profits taxes for those years.
It is defendant’s position (1) that the deductions were correctly taken and allowed in plaintiff’s return for the base period year as ordinary and necessary expenses incurred in carrying on plaintiff’s business, and (2) that plaintiff, in computing its excess profits tax liability for the years here involved, is foreclosed from claiming, under section 711 (b) (1) (E) of the Code, that the cost of repairs was a casualty loss, since the deductions were claimed and allowed in the base period year as expense items.
The stipulated facts disclose that plaintiff, a Virginia corporation, was entitled to use its excess profits net income for the calendar year 1938 as its average base period net income in determining its excess profits credits for the years 1942 and 1943. During the base period year, buses belonging to plaintiff were involved in a number of accidents as a result of which they were damaged. The cost of repairs to the buses, for which plaintiff was not compensated by insurance or otherwise, was $24,766.60. Similar accidents in 1937 and 1939 caused damage to plaintiff’s buses in total amounts of $20,068.80 and $26,162.65, respectively.
In filing its income tax returns for 1937, 1938, and 1939, the respective amounts representing expenditures for repairs to buses damaged in accidents were deducted by plaintiff and allowed by the Commissioner of Internal Eevenue as an expense deduction. No deductions were claimed in the space *117 provided for entering “Losses by fire, storm, shipwreck, or other casualty, or theft.”
In its excess profits tax returns for the years 1942 and 1943, however, plaintiff entered the amounts above referred to in the space provided for “Casualty, demolition, and similar losses.” Plaintiff thus claimed the expenditures to be unallowable deductions in determining its excess profits net incomes for 1937,1938, and 1939.
The Commissioner of Internal Revenue objected to this treatment of the expenditures, and considered them as allowable deductions in determining plaintiff’s excess profits net incomes for those years. Timely additional assessments of excess profits taxes were made against plaintiff, and the additional assessments with interest were satisfied, as set forth fully in finding 8.
On December 16, 1948, plaintiff filed timely claims for refund of excess profits taxes paid in the amounts of $21,175.45 and $18,098.65 for the calendar years 1942 and 1943 respectively. The basis for these claims was stated:
Contrary to the provisions of Section 711 (b) (1) (E) of the Internal Revenue Code, casualty losses sustained by taxpayer during its base period were erroneously deducted in determining the base period net income used in computing its excess profit credit.
The claims for refund were thereafter rejected on the ground that in plaintiff’s business the repairs of accidental bus collision damages were ordinary and necessary expenses, and not casualty losses as contemplated by the statute. The parties have stipulated that if plaintiff is entitled to recover in this action, the amount of the recovery should be reduced by deficiencies in income taxes for 1942 and 1943 which would result from the determination of any overpayment of excess profits taxes for those years.
Section 711 (b) (1) (E) of the Internal Revenue-Code, pursuant to which plaintiff seeks to adjust its base period excess profits net income, provides as follows:
Sec. 711. Excess Profits Net Income—
* * * * *
(b) Taxable Years in Base Period.
(1) General rule and adjustments. — The excess profits net income for any taxable year subject to the Revenue *118 Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made (for additional adjustments in case of certain reorganizations, see section 742 (e)) :
* # ❖ *
(E) Casualty, Demolition, and Similar Losses.— Deductions under section 23 (f) for losses arising from fires, storms, shipwreck, or other casualty, or from theft, or arising from the demolition, abandonment, or loss of useful value of property, not compensated for by insurance or otherwise, shall not be allowed;
The Revenue Act of 1938,62 Stat. 447, provides in pertinent part as follows:
Sec. 23. Deductions From Gross Income In computing net income there shall be allowed as deductions:
(a) Expenses.
(1) In general. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.
Hs # * * #
(f) Losses by Corporations. — In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.
The first issue raised by the parties is whether expenditures representing the cost of repairs to plaintiff’s buses occasioned by accidents in 1938 were deductible in plaintiff’s income tax return for that year as “ordinary and necessary expenses” under section 23 (a) (1) of the Revenue Act of 1938, supra, or as “losses sustained during the taxable year and not compensated for by insurance or otherwise,”[1] under section 23 (f) of the Act.
Reading the words of the statute in their obvious meaning, the provisions for deductions of “ordinary and necessary expenses” and “casualty losses” would seem to be mutually exclusive,[2] for the normal connotation of the one negates, at *119 least by implication, the idea of the other. It must be recognized, however, that in practice the distinction is sometimes ephemeral,[3] and as the Supreme Court said in Welch v. Helvering, 290 U. S. 111, with reference to the phrase “ordinary and necessary expense”:
Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life.' Life in all its fullness must supply the answer to the riddle.
On the facts before us, the distinction, while decisive, is indeed one of degree and not of kind. We think, however, that plaintiff has not sustained a casualty loss within the intent and meaning of the statute, but rather that the expenditure was correctly deducted as an ordinary and necessary business expense.
During the year 1938, plaintiff had an average of 243 buses in service, averaging 8,029 bus miles per month per bus operated. Thus, plaintiff’s buses traveled almost 2,000,000 miles per month during that year. Under such circumstances, accident collision damage was expected, normal, and inevitable, and the cost of repairing such damage was an ordinary and necessary expense of doing business.
Plaintiff’s expenditures for bus repairs due to accidents in 1938 amounted to $24,766.60. Although we do not have before us the number of buses in service during 1937 and 1939, the record reveals expenditures for repairs in those years of $20,068.80 and $26,162.65, respectively. The relative consistency in amounts is readily apparent. Such consistency, indicating a normal and recurring expense, is the antithesis of what Congress intended to provide for when it enacted section 23 (f) as it relates to casualty losses.[4] The *120 conclusion is inescapable that bus accidents, with their consequent cost of repairs, are an ordinary and necessary concomitant of carrying on the business which plaintiff operated.
We do not think that under the circumstances of this case the cost of repairs may properly be considered a casualty loss within the meaning of the statute. See Jones v. Smith, 193 F. 2d 381, cert. den. 343 U. S. 952. What might, in a different setting, be a casualty loss can more correctly and appropriately be catalogued here as an ordinary and necessary business expense, for in fact that is what the expenditures represented.
Defendant has also advanced the argument that plaintiff is foreclosed from claiming under section 711 (b) (1) (E) that the expenditures were casualty losses, since in its income tax return for the base period year the deduction was claimed by plaintiff and allowed by the Commissioner as an expense item. In view of our conclusion above, we need not decide the issue. The Tax Court, in Consolidated Motor Lines, Inc., 6 T. C. 1066, Schneider Grocery Co., 10 T. C. 1275, and Veeder-Root, Inc., 11 T. C. 602, has considered the problem and sustained defendant’s position.
From what we have said, it follows that plaintiff’s excess profits tax liability for the years 1942 and 1943 was correctly computed and assessed, and the petition will therefore be dismissed.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court makes findings of fact, based upon the evidence, the stipulation of the parties, and the briefs and argument of counsel, as follows:
1. Plaintiff is a corporation organized on November 9, 1936, under the laws of the State of Virginia, with its principal place of business located in Charleston, West Virginia. At all times material, plaintiff was engaged in the business of a common carrier of passengers by motorbus. Plaintiff’s accounts were kept and its federal tax returns were filed on a calendar year and accrual basis. During the years *121 involved in this action, plaintiff’s excess profits credit was determined upon the income basis. Its average base period net income was its excess profits net income for the calendar year 1938.
2. During the year 1938, plaintiff’s buses were involved in numerous accidental collisions with other vehicles and with stationary objects. As a result thereof, the buses were damaged to the extent that plaintiff’s costs for repairs, not compensated for by insurance or otherwise, aggregated $24,766.60. Attached hereto and marked “Exhibit I” is a schedule showing with respect to each such accident, except those involving repair costs of less than $50.00, the number of the bus, the nature of the accident, the cost of repairing the accident damage, and the adjusted basis of each bus for determining loss on December 31,1938. Similar accidental collisions in 1937 and 1939 caused damages to plaintiff’s buses in total amounts of $20,068.80 and $26,162.65 respectively. The average number of buses operated by plaintiff during the year 1938 was 243, and the bus miles per month per bus operated averaged 8,029 miles.
3. Plaintiff keeps its accounts in accordance with the “Uniform System of Accounts for Motor Carriers” effective January 1, 1938, prescribed by the Interstate Commerce Commission. This “Uniform System of Accounts” provides that expenditures for repairs to revenue equipment shall be recorded as follows:
4140. Repairs to Revenue Equipment.
This account shall include cost of repairs to revenue automotive equipment used in transportation service. (For list of equipment see account 1221 — Revenue Equipment.) This account shall be maintained so as to reflect separately the cost of repairs to revenue automotive equipment involved in accidents. (See instructions 26 and 28.)
Note A. — An accident for the purpose of this account is damage caused through the collision of a vehicle with either a stationary or moving object, or through tire failure or fire.
INSTRUCTIONS’
26. Repairs, Cost op.
A. The cost of repairs chargeable to the various operation and maintenance expense accounts includes *122 labor employed, materials used, and expenses incurred in all current maintenance (not including depreciation and amortization), such as:
(1) Inspecting, testing, and reporting on the condition of operating property specifically to determine the need for repairs, minor replacements, rearrangements, and changes.
(2) Testing for, locating, and clearing trouble.
(3) Routine work to prevent trouble, such as general overhauling, removing carbon, grinding valves, adjusting and relining brakes, adjusting shock absorbers, cleaning and adjusting engines, etc.
(4) Replacing minor items of operating property. (See also instruction 21 C.)
(5) Rearranging and changing the location of property not retired.
(6) Restoring the condition of property damaged by wear and tear, storms, breakage, floods, fire, accident, or other casualties. (See also Paragraph B.)
(7) Training employees for repair work.
(8) Inspecting and testing after repairs have been made.
B. Materials recovered in connection with repairs to property shall be credited to the same account to which the repair cost was charged.
C. If employees engaged in transportation, station, or terminal service are also required to make repairs, an equitable proportion of their pay and expenses shall be charged to the account appropriate for the cost of such repairs. (See instruction 28.)
D. If the book cost of any property is carried in account 1281-Undistributed Property, the repairs to such property shall be charged to the accounts provided for repairs to property of the same nature and use, the book cost of which is carried in other operating property accounts. Repairs to property leased from others shall be treated in like manner.
* * H* # *
28. Distribution of Pat and Expenses of Employees.
The charges to investments, operation and maintenance expenses, and other accounts for services and expenses of employees engaged in activities chargeable to various accounts, shall be based upon the actual time engaged in the respective classes of work, or in case that method is impracticable, upon the basis of a study of the time actually engaged during a representative period. The pay and expenses of an employee of on~ department who occasionally performs incidental services involving *123 but small expense for another department may be included in the expense of the department in which the employee is regularly employed.
In order to carry out the accounting procedure so prescribed, plaintiff carries on its books under the general classification “Equipment Maintenance and Garage Expense” an account numbered 4143, which is entitled “Repairs to Revenue Equipment — Accident”, and the cost of repairing accident damage to revenue equipment is entered in this account so that it will be separately reflected. This account was shown in the “Equipment Maintenance and Garage Expense” section of plaintiff’s December 1938 Financial and Operating Report as follows.

Aeet. Mquipment maintenance and Year to date No. garage expense December 1988

Repairs to revenue equipment:
4141 Material_$_
4142 Labor_ _
4143 Accident_ 24,766. 60
4144 Obsolete material and inventory shortage
Servicing of revenue equipment:
4151 Lubrication _ _
4152 Washing and cleaning_'_ _
4153 Bus storage- -
4160 Tires and tubes — revenue equipment_ _
Net garage overhead and joint facilities: Garage overhead (per Statement below) _$.
Joint garage expense — Debit_ . J-4 SO }-*•
Joint garage expense — Credit_ . $■ M <£> 05
Total equipment maintenance and garage expenses (St. No. 5)_$.
4. Plaintiff’s excess profits credit for 1942 is either $1,333,978.41 or $1,357,506.68, depending upon whether in *124 determining plaintiff’s excess profits net income for the year 1938 under Section 711 (b) (1) of the Internal Revenue Code, the aggregate amounts of bus collision damages in 1938 should be treated as (1) ordinary and necessary expenses paid or incurred during the taxable year in carrying on business within the meaning of Section 23 (a) (1) of the Revenue Act of 1938; or as (2) losses sustained during the taxable year and not compensated for by insurance or otherwise within the meaning of Section 23 (f) of the same Act.
5. Plaintiff’s excess profits credit for 1943 is either $1,314,947.67 or $1,338,475.94, depending upon whether, in determining plaintiff’s excess profits net income for the year 1938 under Section 711 (b) (1) of the Internal Revenue Code, the aggregate amounts of bus collision damages in 1938 should be treated as (1) ordinary and necessary expenses paid or incurred during the taxable year in carrying on business within the meaning of Section 23 (a) (1) of the Revenue Act of 1938; or as (2) losses sustained during the taxable year and not compensated for by insurance or otherwise within the meaning of Section 23 (f) of the same Act.
6. In plaintiff’s federal tax returns filed for 1937, 1938, and 1939, plaintiff claimed deductions for amounts representing its expenditures in repairing accidental bus collision damages as part of “Cost of operations” under item 5, but in none of the returns were any deductions claimed under item 23 (later, 24) on the returns, to wit: “Losses by fire, storm, shipwreck, or other casualty, or theft.” The Commissioner of Internal Revenue allowed the deductions claimed on plaintiff’s income tax return for 1938 and made no objection to plaintiff’s treatment of the items.
7. Plaintiff timely filed its income and excess profits tax returns for the calendar years 1942 and 1943 with the Collector of Internal Revenue at Parkersburg, West Virginia, and paid the taxes thereon shown due. No part of said payments is in issue here. In the excess profits tax returns for 1942 and 1943, plaintiff entered the amounts representing its expenditures in repairing accidental bus collision damages which occurred during the years 1937,1938, and 1939 in the appropriate columns of Schedule B opposite item 22, to wit: “Casualty, demolition, and similar losses not taken into ac *125 count in computing line 12, 13, or 15.” By making these entries, plaintiff claimed the expenditures to be unallowable deductions in determining its excess profits net incomes for 1937,1938, and 1939. The Commissioner of Internal Revenue objected to plaintiff’s treatment of the expenditures and treated them as allowable deductions in determining plaintiff’s excess profits net income for 1937,1938, and 1939.
8. As a result of revenue agents’ reports, additional assessments of excess profits taxes were timely made against plaintiff as follows:

Taxable

Year Interest Total

1942 $22,902.67 $6,S90.60 $29,293.27
1943 21, 835.20 4,782. 61 26,617. 81
The additional assessment and interest for 1942 was satisfied by a post-war refund credit of $2,290.26, a credit of $8,002.45 from an overassessment of income tax for the year 1942, a credit of $9,581.21 from an overassessment of income tax for 1943, and the balance of $9,419.35 was paid to the Collector on March 24,1948. The additional assessment and interest for 1943 was satisfied by a post-war refund credit of $2,183.51 and a cash payment of $24,434.30 on March 24,1948.
9. On December 16, 1948, plaintiff filed timely claims for refund of excess profits taxes paid in the amounts of $21,175.45 and $18,098.65 for the calendar years 1942 and 1943, respectively. The basis of each claim was stated as follows:
Contrary to the provisions of Section 711 (b) (1) (E) of the Internal Revenue Code, casualty losses sustained by taxpayer during its base period were erroneously deducted in determining the base period net income used in computing its excess profit credit.
10. Plaintiff’s excess profits tax claims for refund for 1942 and 1943 were rejected on November 10, 1949, and July 29, 1949, respectively, for the stated reason that in plaintiff’s business the repairs of accidental bus collision damages were ordinary and necessary expenses, and not casualty losses as contemplated by the statute.
11. If the Court should determine that plaintiff is entitled to recover in this action, the amount of the recovery should be reduced by deficiencies in income taxes for the years involved *126 which would result from the determination of any overpay-ments of excess profits taxes.
EXHIBIT I
ATLANTIC GREYHOUND CORPORATION
SCHEDULE OF 1938 ACCIDENT REPAIR COSTS WITH A DESCRIPTION
OE EACH ACCIDENT AND THE ADJUSTED BASIS FOR EACH BUS

Adjusted basis Cost of repair- for determin-Bus ing accident ing loss on Be-No. Nature of accident damage cember 81, 1988

309 Skidded into ditch on slippery high-way_ $66. 10 $618.48
360 Collision damage_ 51. 73 2,946.56
363 Bus ran into ditch to avoid collision. _ 143.40 2,946.56
373 Bus hit bridge to avoid approaching car_ 109.97 3,945.26
374 Bus ran into ditch and struck rock cliff_ 155. 07 3, 945. 26
375 Road shoulder gave way causing bus to hit tree_ 382. 53 3, 945. 26
376 Truck cut in front of bus forcing it into ditch_ 56. 49 3, 945. 26
385 Hit car driven on wrong side of road. _ 78. 03 4, 597. 96
385 Bus collided with truck_ 109. 02 -’-
386 Collision damage_ 64. 19 4, 597. 96
387 Car collided with side of bus_ 110. 12 4, 597. 96
389 Truck skidded into bus on slippery highway_ 135. 35 4, 597. 96
405 Collision damage_ 76. 46 572. 61
409 Bus skidded into ditch_ 121. 11 572. 61
454 Bus caught fire__ 118.85 *1,099.12
456 Bus slipped from icy highway, went over bank_ 404. 52 732. 75
459 Collision damage_ 299. 85 1, 501. 47
459 Truck collided with bus_ 81. 15 -
461 Bus skidded from highway into ditch, turned over_ 360. 53 1, 501. 48
601 Bus collided with car_ 130. 61 8, 577. 49
606 Collision damage_ 199. 21 8, 569. 99
608 Truck ran into door of bus_ 65. 40 8, 569. 99
608 Truck collided with side of bus_ 72. 39 -
612 Traetor fell from truck and damaged bus__- 202.03 8,766.21
613 Collision damage from sideswipe_ 118. 81 8, 766. 21
616 Truck skidded into front of bus_ 50. 13 8, 766. 21

*127
Bus No. Cost of repairing accident Nature of accident damage Adjusted basis for determining loss on December SI, 1988

617 Damage from skidding off slippery highway_ $258. 42 $8, 766. 21
Bus ran into rear of truck_ 755. 49 N H CO
Collided with truck_ 644. 87 8, 766. 21 05 H CO
Truck collided with side of bus_ 50. 29 8, 956. 70 CO CO CO
Car collided with bus wrhile passing truck_ 55. 66 8, 956. 70 CO co
635 Bus collided with car_ 334. 47 8, 956. 70
636 Car struck bus at road intersection_ 808. 07 9, 147. 19
638 Truck sideswiped bus in passing_ 61. 57 9, 147. 19
649 Car collided with front of bus_ 53. 76 11, 898. 24
658 Sideswipe on highway_ 85. 50 12, 053. 26
658 Bus collided with rear of truck_ 213. 79
661 Collided with truck_ 125. 35 12, 053. 26
661 Collision damage_ 86. 61
664 Skidded into swamp avoiding cow in road_ 68. 70 12, 053. 26
Head-on Collision_ 4, 639. 81 12, 261. 02 05 CO co
Collision damage_ 76. 90 12, 263. 00 N N CO
Truck collided with side of bus_ 97. 49 12, 263. 00 05 N co
Collided in fog with car parked without lights_ 268. 32 12, 263. 00 (N 00 CO
Bus ran off highway_ 140. 69 12, 263. 00 CO 00 CD
Collision damage_ 1, 655. 97 CO 00 CO
Collided with car that ran in front of bus_ 310. 87 13, 896. 80 U5 00 CO
690 Two cars collided and one careened into bus_ 438. 52 14, 117. 32
690 Bus skidded from slippery highway and turned over_ 2, 531. 96
Truck crowded bus off road. __ 840. 48 14,117. 32 05 CO H
Collision damage_ 56. 38 14, 117. 32 O) CO CO
Collision damage_ 364. 51 03 CD CO
Bus on slippery highway skidded into pole..... 618.33 14, 337. 84 M O O
Collision damage_ 571. 25 14, 337. 84 O CO
Bus forced into ditch by skidding car. 80. 88 14, 638. 27 O CO
Bus skidded from slippery highway and turned over_ 2, 104. 62 14, 638. 27 05
739 Car crowded bus off highway_ 62. 55 Other accidents involving repair costs of less than $50.00 each, resulting from minor collisions, birds flying into windshields, etc_ 2, 541. 47 17, 635. 00
Total__$24, 766. 60 $402, 584. 54
*128 CONCLUSION OP LAW
Upon the foregoing findings of fact, which, are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.
Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

 Section Til (b) (1) (E), pursuant to which plaintiff seeks here to adjust its excess profits net income for the base period year, provides that “Deductions under section 23 (f) for losses arising from fires, storms, shipwreolc, or other casualty, * * * shall not be allowed [Italics added.]

 See Boston Molasses Co. v. Commissioner, 155 F. 2d 45.

 Paul and Hertens, Law of Federal Income Taxation, § 26.34. In a footnote to this section the authors comment that “It is striking how often the deduction is claimed in the alternative.”

 The legislative history of section 711 (b) (1) (E) indicates that the Congressional intent in enacting' that statute did not include expenditures of the type here involved. House Report No. 2894, 76th Cong., 3d Sess., in discussing the provision for the disallowance of casualty losses,. states, at p. 8:
The adjustment of income to take care of these unusual and nonrecurring items makes for equity and the removal of hardships which otherwise would occur. [Italics added.]

At time of retirement prior to December 31,1938.